STATE of Missouri, Plaintiff-Respondent,

v.

Joe Frank DEIMEKE, Defendant-Appellant.

No. 34869.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Sept. 11, 1973.

Motion for Rehearing Denied Oct. 10, 1973.

Edwards, Seigfreid, Runge & Hodge, Mexico, for defendant-appellant.

Thomas I. Osborne, Pros. Atty., Mexico, for plaintiff-respondent.

KELLY, Judge.

Appellant was charged in an information with the offense of driving a motor vehicle while in an intoxicated condition, and after a jury trial was convicted and fined $100.-00. This appeal followed.

Although he relies on three points for reversal and remand for a new trial, we find his first point decisive and reverse and remand for a new trial without any evidence of the Breathalyzer test and its results.

The facts which are dispositive of this issue are that appellant was arrested on December 13, 1970, while operating his Cadillac auto over and along U.S. Highway 54 one and one-half miles south of the City of Mexico, Missouri, and was taken to

the Mexico Police Department headquarters in the custody of Trooper Gordon Hale, a member of the Missouri State Highway Patrol. After their arrival at police headquarters the Trooper conducted a Breathalyzer test on a 900 Breathalyzer manufactured by the Stephenson Corporation of Red Bank, New Jersey. According to Trooper Hale the result of this test was that appellant's blood contained .18 of 1% blood alcohol, which, under law, was prima facie evidence that appellant was intoxicated at the time the specimen was taken. Section 564.442[3] R.S.Mo.1969, V.A.M.S. This testimony came into the case over a continuing objection on the grounds that the test was conducted on a machine which was inaccurate and not functioning properly on the date of the test. The objection should have been sustained and the results of the breathalyzer test excluded from the evidence in the case.

■ "Upon the trial of any criminal action . . . arising out of acts alleged to have been committed by any person while driving a motor vehicle while intoxicated, the amount of alcohol in the person's blood at the time of the act alleged as shown by chemical analysis of the person's blood . . . is admissible in evidence." Section 564.442 R.S.Mo.1969, V.A.M.S. However, for any chemical analysis of the person's breath, to be considered valid under the provisions of the foregoing section, it shall be performed according to methods approved by the state division of health by a person possessing a valid permit issued by the state division of health for this purpose. The state division of health is authorized to approve satisfactory techniques or methods for the giving of the tests. Section 564.441 par. 2 R.S.Mo.1969, V.A.M.S. Pursuant to thie authority vested in it by the Legislature of this State, the state division of health has promulgated The Rules for Determination of Blood Alcohol by Breath Analysis, and the State introduced these Rules into evidence. One of the provisions of these rules pertinent to the disposition of this case authorizes any-

one holding a Type III Permit to operate a breath analyzer for the determination of alcoholic content of blood from a sample of expired (alveolar) air; however, in doing so he "must adhere strictly to the operating procedures set forth by the manufacturer of the device for which he holds a permit" and he "shall effect no modifications of the device for which he holds the permit or in its operating procedure without the written consent of the Division." Rules for Determination of Blood Alcohol by Breath Analysis, Missouri Division of Health, September 8, 1970, Section 4, Operating Rules, C. p. 4. State v. Sinclair, 474 S.W.2d 865, 867–868 [1–2] (Mo.App. 1971); State v. Paul, 437 S.W.2d 98, 103 (Mo.App.1969).

With these principles in mind, we may now consider the evidence upon which appellant's continuing objection to the admission into evidence of the results of the Breathalyzer 900 test conducted on December 13, 1970, emanate. At trial a State witness, Corporal Payne, a member of the Missouri State Highway Patrol, and holder of a Type III and Type II Permit from the state division of health, testified that on December 1, 1970, he had conducted a test on the Breathalyzer 900 used in the testing of appellant's blood on the 13th of December, 1970. That on December 1, 1970, the machine was functioning properly. The next time he tested the machine, on January 2, 1971, his notes revealed that he cleaned the instrument chamber, the sample chamber, the cylinder and piston. According to his testimony he cleaned the cylinder and the piston "because the delivery time exceeded the limitation of 35 seconds." He could not testify as to how much the delivery time exceeded the 35 seconds because he had failed to include that in his notes of his inspection. Subsequently, Charles F. Durham, a chemist at the Missouri Highway Patrol Laboratory and a holder of Type I, Type II and Type III Permits from the state division of health testified, on cross-examination, that the manufacturer's specifica-

tions for the delivery time is 20 to 35 seconds.

 There was no evidence to fix the time when this malfunction occurred but from the evidence it is inescapable that it occurred sometime between the 1st of December, 1970, and the 2nd day of January, 1971. The blood test of appellant was conducted between those two dates, to-wit, on the 13th day of December, 1970. A jury may not be permitted to speculate when this increased delivery time occurred.

In this posture, we hold then that the State failed to carry its burden imposed upon it by the statute which made admissible into evidence the results of the chemical analysis of appellant's blood only if the test was performed according to methods approved by the state division of health. Trooper Hale, unwittingly though it might have been, failed to adhere strictly to the operating procedures set forth by the manufacturer because of a malfunction in the machine of which he was indubitably unaware at the time.

 The State, in an effort to overcome this fatal flaw in the Breathalyzer test, recalled Corporal Payne and he was permitted, over objection, to express an opinion that this increased delivery time would not affect the validity of the test. Mr. Durham was also recalled and over objection permitted to give a similar opinion. His testimony in this respect was that the delivery time "of 20 to 30 seconds, or actually 20 to 35 seconds" was not what he would call "a critical item." While both Corporal Payne's and Mr. Durham's testimony might have some professional validity, the Legislature of this State and the state division of health have seen fit to impose requirements by statute and rules promulgated by the state division of health which have replaced the common law foundation for the admission into evidence of the results of chemical analysis of a person's blood and are mandatory. Their evidence in this respect was therefore incompetent and should not have been permitted. Judgment is reversed and cause remanded for new trial.

SMITH, P. J., and SIMEONE, J., concur.