Kristen HASSELBRING, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. SD 31768.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 4, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 13, 2013.

---

3. R.B.'s Motion for Leave of Court to file a    supplemental legal file is granted.

Timothy Allan Blackwell, Jefferson City, for Appellant.

Timothy Richard Cisar, Lake Ozark, for Respondent.

DANIEL E. SCOTT, P.J.

A trial court reinstated Kristen Hasselbring's driving privileges, which Director had revoked for refusing to take a chemical test.[1] Director appeals. We affirm.

## Refusal at Issue/Trial Court Finding and Reasons

To uphold this revocation, the trial court had to find that (1) Hasselbring was arrested, (2) the officer had reasonable grounds to believe Hasselbring was driving while intoxicated, and (3) Hasselbring refused to submit to testing. *See Davis v. Dir. of Revenue*, 346 S.W.3d 319, 322 (Mo.App.2011). Director had the burden of proof; failure to satisfy that burden meant license reinstatement. *Id.*

Only the third element—refusal—was at issue. As it explained in denying Director's motion to reconsider, the trial court found its answer in the officer's squad car video of the alleged refusal and surrounding circumstances:

Regarding the refusal matter, I reviewed the cases. My issue is not a matter—it's not—it's not one of law. It's just one of what this Court believed the facts to show. When I viewed the video, I found myself questioning whether or not if I was a layperson that wasn't familiar with the process, if I would have understood that I had just refused to a chemical breath test. And I came to the conclusion that I was left, if I were that person, not a judge or an attorney that's dealt with these kind of cases, but just your average reasonable person, I think

the reasonable person would have been thoroughly confused as to whether or not they had just made a knowing refusal of a chemical test that was going to result in their license being revoked for a year. And this is the case where the officer had her submit to a breath—a portable breath test.

[DIRECTOR'S COUNSEL]: Portable breath test, yes.

THE COURT: She submitted [to] it. The batteries ran out while it was processing the information. He looked for a bunch of batteries. He said prior to that that this was the only test that he was going to give her. He indicated that this was the only test. And then after that, he was trying to explain to her that she had to go and take another test, and she at that point was very confused. I remember her asking some questions and the officer saying, "Well, you've got to tell me 'Yes' or 'No' or I'm going to mark it as a refusal, type of thing."

And so, it was a very unique situation. We don't see that every time. And I think she was confused. And honestly, I think the officer was a little bit confused about what to do when the batteries run out on the portable breath test. But I remember the issue that the Court focused on in this case was the fact that he seemed to indicate this was the only test that he was going to be giving. And so, in her mind she was thinking she had just submitted to that test.

And so, it's one of those situations where I'm not sure the officer necessarily did anything egregious or wrong, and I wouldn't say he did. But the circumstances, I think, would have caused any

---

1. *See* § 577.041.3, RSMo 2000, as amended through 2010.

reasonable person to think that or to not have knowingly refused a breath test whenever they seemed to be wanting to cooperate with the officer.

So I'm going to deny your second request to reconsider.

[DIRECTOR'S COUNSEL]: Okay.

THE COURT: And those are the—those are the reasons why I made my ruling in the first place is, I didn't think a reasonable person would have thought that they had knowingly refused a breath test.

[DIRECTOR'S COUNSEL]: Okay.

THE COURT: And so—And that's just a finding of fact based on reviewing the video and then me going through the reasoning process in my mind as to whether I thought there was a knowing refusal.

### Analysis of Claims on Appeal

■ We must affirm the judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010).

■ Director asserts that the trial court misapplied the law and the judgment was not supported by evidence. We disagree. As to the latter, if the court did not believe Director's proof, it could properly find for Hasselbring. *See White*, 321 S.W.3d at 305. " 'Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it.' " *Id.* (quoting *Stiff v. Stiff*, 989 S.W.2d 623, 628 (Mo.App.1999)). Moreover, we have reviewed the video, which adequately supports the trial court's conclusions.

As to the law, Director repeatedly cites *Ruth v. Dir. of Revenue*, 143 S.W.3d 741 (Mo.App.2004). We find *Ruth* distinguishable for several reasons; we will mention

two. In *Ruth's* day, reviewing courts did not have to defer to trial court findings if a refusal dispute did not involve direct contradiction by different witnesses. *See id.* at 746 (citing *Myers v. Dir. of Revenue*, 9 S.W.3d 25, 28 (Mo.App.1999)). Also at that time, the Director apparently could obtain a reversal merely by showing that "Driver failed to rebut Director's prima facie case." *See id.* Neither of these remains true. *See White*, 321 S.W.3d at 308–09, 311.

Director also cites cases indicating, for example, that "[t]here is no mysterious meaning to the word 'refusal'.... Whether the declination is accomplished by verbally saying, 'I refuse', or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference." *Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975). Yet these are not what the video depicts. The trial judge seemingly agreed, stating that "I reviewed the cases. My issue is not a matter—it's not—it's not one of law. It's just one of what this Court believed the facts to show[ ]" when he viewed the video.

### Conclusion

Director met the burden *of production*, but the burden of *proof* means more. It also includes the burden of *persuasion*— " '[a] party's duty to convince the fact-finder to view the facts in a way that favors that party.' " *White*, 321 S.W.3d at 305 (quoting Black's Law Dictionary 223 (9th ed.2009)). Because Director did not carry that burden, we deny Director's sole point and affirm the judgment.

DON E. BURRELL, C.J., and MARY W. SHEFFIELD, J., concur.