Linda F. **MORRISON, John Morrison, and Katherine Morrison, Appellants,**

v.

**JACK SIMPSON CONTRACTOR, INC., Respondent,**

v.

**SHELTER GENERAL INSURANCE CO., INC., Respondent.**

No. 53103.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 9, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 15, 1988.

Milton B. Garber, Fulton, for Morrisons.

Marion E. Wasinger, Hannibal, for Jack Simpson.

John D. Collins, Macon, for Shelter Ins.

KAROHL, Judge.

Plaintiffs-appellants are judgment creditors of defendant Jack Simpson Contractor Inc. They obtained the judgment in a suit for wrongful death of Lloyd Morrison. Lloyd Morrison was killed when struck by a motor vehicle operated by an intoxicated customer of defendant Jack Simpson Contractor Inc., d/b/a Simpson's Pine Springs Restaurant & Lounge. This occurred on October 16, 1981. On that date defendant Jack Simpson Contractor, Inc. was insured by defendant Shelter General Insurance Co. Inc., under a comprehensive general liability insurance policy which excluded coverage for liability arising out of a claim based on sale of alcoholic beverages. In order to have the benefit of Section 379.200 RSMo 1986, plaintiffs sought reformation of the insurance policy to avoid the provisions excluding coverage. They claim the exclusionary clause was the product of mutual mistake of defendants, or, mistake on the part of the insured caused by the fraud or inequitable conduct of Shelter. The trial court refused reformation. Plaintiffs appeal on the basis that the refusal of reformation was against the weight of the evidence.

The rules governing reformation of written instruments, including insurance policies, are well-settled. Generally, reformation is appropriate where parties agree on a contract but due to mistake or fraud, a discrepancy exists between the parties' understanding and their written expression of it. In such cases, reformation serves not to make a new contract for the parties, but rather to more adequately express the contract the parties have made for themselves. *See generally*, Dobbs, *Hornbook on Remedies*, Section 11.6 at 746 (1973). The party seeking reformation bears a heavy burden and must show the existence of mistake by clear, cogent and convincing evidence and upon testimony entirely exact and satisfactory. *Mills v. Cameron Mutual Insurance Co.*, 674 S.W.2d 244, 249 (Mo. App.1984).

Defendant Jack Simpson Contractor, Inc., as the insured, did not join in the claims of mutual mistake or fraud. Ac-

cordingly, in order to prevail, plaintiffs were encumbered with the obligation to assume the legal position of the insured and to rely on proof of the circumstances in which the insurance policy was issued where they were not parties to the transaction. Further, the parties for whom they claim mutual mistake are the insurance company and the insured, neither of whom acknowledge a mutual mistake. Finally, as a question of fact, neither of the parties to the insurance contract claim any fraud or inequitable conduct on the part of Shelter. Under these circumstances plaintiffs' problems of proof were severe even before a consideration of the legal burden of proof occurred.

Plaintiffs relied entirely on the testimony of representatives of defendants in an effort to reconstruct the negotiations for the insurance policy. The operative facts are found from the testimony of representatives of the insurance company and the insured. There is no contradictory testimony. For these reasons there is no real dispute on the facts.

In December, 1979, Jack Simpson decided to renovate and expand Jack Simpson Contractor, Inc., d/b/a Pine Springs Restaurant & Lounge by doubling the size and value of the original building which contained a restaurant and package liquor store. The renovation created a new building for the package liquor store and significantly increased the size of the restaurant and lounge. At that time Jack Simpson and his daughter, Jackie Simpson McNabb, with a view to increasing insurance coverage to protect the added investment, consulted Bob Riley, an agent for Shelter General Insurance Company. McNabb asked Riley if liquor liability coverage was available from Shelter. She wanted coverage "in case a drunk hit somebody on the road." Riley told them that Shelter would not cover the risk, but he would check on it and see if it was available elsewhere. Riley testified that Shelter General Insurance Company definitely did not have liquor liability coverage, nor did the company underwrite such coverage. He told McNabb he would "look into other avenues" (meaning other underwriting companies) and see if anything was available and "report".

Riley subsequently was unable to obtain any liquor liability coverage. He so informed Betty Harrison, the manager of Simpson's restaurant, and told her that he could not secure liquor liability coverage for the Simpsons. He did not so inform Jack Simpson or Jackie Simpson McNabb. McNabb testified that Riley never told her that Shelter had liquor liability coverage and that she did not think Jack Simpson Contractor Inc. ever had that type of coverage.

The original general comprehensive liability policy which resulted from these conversations was issued in July, 1980 and provided coverage for one year. The exclusion clause was in the policy. The policy was renewed in 1981 and in 1982. Lloyd Morrison was killed on October 16, 1981 and the last renewal was cancelled by Doris Vaughn, the new manager of the restaurant and lounge, on July 18, 1983.

■ In determining whether court-tried findings of fact are against the weight of the evidence, we will not reweigh the evidence, but rather will determine whether there is sufficient evidence to support the findings, after considering the evidence in the light most favorable to the party prevailing below, giving that party the benefit of all reasonable inferences and disregarding the other party's evidence except as it may support the judgment. *Marshall v. Edlin*, 690 S.W.2d 477, 479 (Mo.App.1985).

■ Moreover, we note that when no fact findings are made we consider all fact issues to have been found in accordance with the results reached, and we give due regard to the opportunity of the trial court to determine the credibility of the witnesses. *Southwestern Bell Telephone Co. v. Batten*, 688 S.W.2d 61, 62 (Mo.App.1985), Rule 73.01(a)(2); (c)(2). Here, no findings were requested. None were made.

In order to meet its burden of proof of mutual mistake, or unilateral mistake caused by fraud or inequitable conduct requiring reformation, plaintiffs rely on "two crucial mistakes" of Agent Riley. First,

they claim he led the officers and directors of Jack Simpson Contractor Inc., namely Jack Simpson and Jackie Simpson McNabb, to believe he would obtain liquor liability coverage or if he were unable to do so, he would report back to them. Second, they allege that when Agent Riley found he could not obtain such coverage he failed to report back as promised. This, they argue, led the Simpsons to believe the business had the coverage.

We are not persuaded by these claims.[1] First, neither Jack Simpson nor Jackie Simpson McNabb ever claimed mistake. Neither claimed that they ever believed they had the coverage which would result if the insurance contract were reformed. None of the parties involved in the negotiations offered any evidence from which the court could have found that liquor liability coverage was to be offered in Shelter's comprehensive general liability insurance policy. On the contrary they all acknowledged that Riley informed the applicants that Shelter would not cover that risk. On these facts no mistake warranting the relief of reformation was possible. In order for a mistake to warrant the relief of reformation, it must be mutual and common to both parties of the instrument and it must appear that both have done what neither intended. *Mills v. Cameron Mutual Ins. Co.*, 674 S.W.2d at 249. Further, a mutual mistake in a written contract presupposes a prior agreement, and to show mutual mistake in the instrument, the preceding agreement must necessarily be shown. *Id.* This evidence fully supports the trial court's rejection of the claim of mutual mistake.

Second, appellants' claims of fraud are not adequately pleaded and not proven. The rules governing the pleading of fraud are precise: "The circumstances constituting fraud or mistake shall be stated with particularity." Rule 55.15 In other words, the fraud must clearly appear

from allegations of fact and be independent of conclusions. *Miller v. Ford Motor Co.*, 732 S.W.2d 564, 565 (Mo.App.1987). The allegations of fraud should contain all of the recognized elements. See, *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo. banc 1987). In the present case the petition is insufficient. It pleads only that the insurance company was aware of the exclusionary clause, that Jack Simpson was not aware the clause was in the policy and would not have accepted the policy if aware that it was part of the policy. The pleading does not claim any false statement. It does not allege Riley intended to misrepresent. It does not allege that any of the applicants were ignorant of a false representation. It does not allege reliance on any misrepresentation or any right to rely thereon. At most, plaintiffs' evidence would support a finding that the insured had a right to be disappointed that the coverage was not available from some other source. Plaintiffs argue, and we acknowledge that under some circumstances the technical requirements of pleading fraud may be excused, where defendants defend a fraud action without a motion for more definite statement under Rule 55.-27(d). This was done in *Clark v. Olson*, 726 S.W.2d 718 (Mo. banc 1987). However, the petition in *Clark* alleged a false representation, an intention that the plaintiffs rely and act on the representation, and that plaintiffs were damaged by the representation because the statements induced plaintiffs to purchase a defective house. *Id.* at 720. The pleadings in the present case fall short of notice of an intention to rely on fraud as a basis of recovery. Moreover, the evidence in the present case supports no more than a finding that Riley would attempt to find alternative coverage. There is no evidence that he did not attempt to find such coverage. On the contrary, he testified that he informed the insured's manager that he could not find an

---

1. We remind counsel that on appellate review we are concerned with the *sufficiency* of the evidence and not the weight of the evidence. We do not reweigh the evidence when reviewing court-tried findings of fact. *Marshall v. Edlin,*

690 S.W.2d at 479. Although appellant's point is couched in terms of weight of the evidence appellant appears to be addressing sufficiency, and we treat it as such.

underwriter to cover the risk.[2] Whether the manager was an authorized agent for the receipt of such notice is immaterial to a finding that no false representation was made, no detrimental reliance occurred and no injury to the insured resulted. Appellants not only failed to properly plead fraud but they also failed to prove fraud which would entitle the trial court to reform the insurance contract.

Third, appellants failed to prove any inequitable conduct on the part of Riley and Shelter General Insurance Company, Inc. The evidence supports the implied finding of the trial court that no discrepancy exists between the parties' understanding and the terms of the policy which contained the exclusion of coverage provision.

We affirm.

STEPHAN, P.J., and PUDLOWSKI, J., concur.

**2.** We assume that plaintiffs recovered judgment against defendant Jack Simpson Contractor, Inc. on the theory of liability recognized in *Carver v. Schafer,* 647 S.W.2d 570 (Mo.App. 1983). But see, Section 537.053 RSMo 1986; *Lambing v. Southland Corp.,* 739 S.W.2d 717 (Mo. banc 1987); and *Sams v. Childress,* 736 S.W.2d 48 (Mo. banc 1987).